JONES v. GOULD et al.

(Circuit Court of Appeals, Sixth Circuit. December 14, 1906.)

No. 1,551.

1. APPEARANCE—GENERAL OR SPECIAL APPEARANCE—MOTION TO QUASH SERVICE.

The filing in a federal court by the defendant who was a citizen and resident of another state and was there served, of a motion to quash the service on the ground that "it appears from the face of the bill of complaint that the relief sought is of such nature that he cannot lawfully be called upon to defend against the same in this district" did not invoke the exercise of the jurisdiction of the court on the merits, so as to constitute a general appearance; the question raised being whether the case made by the bill was one of a local nature within section 8, Judiciary Act March 3, 1875, c. 137, 18 Stat. 472 [U. S. Comp. St. 1901, p. 513], so as to authorize the court to obtain jurisdiction of defendant by publication or by service of process without the district, which necessarily required the court to look into the bill.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 3, Appearance, § 44.]

2. COURTS—JURISDICTION OF FEDERAL COURTS—LOCAL SUITS.

A suit must be one which concerns the title to some specific property within the district to come within the intent and meaning of Federal Judiciary Act March 3, 1875, c. 137, § 8, 18 Stat. 472 [U. S. Comp. St. 1901, p. 513], authorizing a circuit court to obtain jurisdiction of nonresident defendants by substituted service, and a suit by a member of a syndicate, which was in effect a partnership, to wind up its affairs and for the appointment of a receiver on the ground of mismanagement by the managers, is not such a suit, especially where the only allegation in the bill with respect to property within the district is that the syndicate is the owner of stock in certain railroads therein.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 809.]

3. EQUITY—NECESSARY PARTIES—DISMISSAL—WANT OF JURISDICTION.

 A bill in a federal court is properly dismissed, where the court cannot obtain jurisdiction over nonresident defendants, who are necessary parties, by service of process in another state or by publication, and such defendants cannot be served within the district, and refuse to appear.

Appeal from the Circuit Court of the United States for the Eastern Division of the Southern District of Ohio.

For opinion below, see 141 Fed. 698.

C. B. Matthews, for appellant.

J. H. Doyle and W. M. Duncan, for appellees.

Before LURTON and SEVERENS, Circuit Judges, and COCHRAN, District Judge.

SEVERENS, Circuit Judge. In December, 1901, three of the defendants, Gould, a citizen of New York, and Ramsey and Guy, citizens of Missouri, in the character of managers, entered into an agreement with other subscribers to form a "syndicate," as they called it, for the purpose of acquiring and purchasing certain railroad properties in West Virginia and Ohio, and purchasing coal lands in the former state, and of improving, extending, merging, operating, controlling, and disposing of the properties, the railroads and lands, as the managers might determine, for the benefit of the syndicate. Each of the subscribers agreed to contribute from time to time when required, to the purposes of the syndicate ratably with the others to the extent of their subscriptions. Ample powers were given to the managers for the full control and management of all its affairs, and their appointment was made irrevocable. The profits and losses were to be shared by the subscribers ratably, and the net proceeds of the enterprise were finally to be distributed to them in the like proportion. Subscriptions to this agreement were obtained amounting to $7,000,000 or $8,000,000, of which the managers subscribed about one-half. The complainant in this suit subscribed for $100,000. The project was carried forward by the managers. Railroads were bought or built in each state, and 85,000 acres of coal lands in West Virginia were also bought. For the building and operation of some of the railroads, the managers organized corporations in the states where they were severally located. In other cases, they purchased the capital stock of existing corporations thereby obtaining control. Of the corporations organized by the managers, two were in Ohio, the Janesville, Marietta & Parkersburg Railroad Company and the Marietta, Columbus & Cleveland Railroad Company. Many details of the operations of the managers in the conduct of the business of the syndicate are stated in the bill which it is not now important to enumerate.

On September 26, 1905, the complainant, John S. Jones, of Chicago, and a citizen of Illinois, filed this bill in the Circuit Court for the Southern District of Ohio, against the defendants, Gould as a citizen of New York, Ramsey and Guy as citizens of Missouri, The Union Trust Company, also a citizen of Missouri, and other persons and corporations, citizens of other states than Illinois, the corporations being the railroad companies in West Virginia and Ohio above mentioned,

and the other private parties being persons who had participated in the transactions complained of. The bill, after setting out the agreement of December, 1901, states that the managers, under color of the authority given them, have been guilty of many enumerated breaches of their trust by wrongful acts and negligences in the management of the syndicate's affairs, which have resulted in serious loss and damage to the other subscribers, himself among them. As we are not to decide the merits, it is necessary to do no more than to make this general statement of the charges made by the bill. The prayer is for an injunction to restrain the managers from doing certain specified things in their management of the affairs of the syndicate, which are charged to be prejudicial, for a receiver and for the sale of the assets, the payment of its debts, and the distribution of the net proceeds to the subscribers.

Upon the filing of the bill, the complainant moved thereon for the appointment of a receiver; and the motion was set for hearing on October 9, 1905. And the court made the further order that pending the hearing of the motion, the defendants Gould, Ramsey, and Guy, be restrained from disposing of certain property described in said order. The court also required that notice of the order should be served personally upon the defendants last named, and Blair, another of the individual defendants described in the bill as a citizen of West Virginia. Notice of the hearing and a certified copy of the bill of complaint were served on Blair; at what place is not shown by the affidavit of service, but as the affidavit was made and sworn to in West Virginia, and he is described as a citizen of that state, we infer that the notice was served there. We also infer from what follows that a like notice was also served on Gould, Ramsey, and Guy in the states of which they were, respectively, citizens. Ramsey, Guy, and Blair in one motion, and Gould in another, appearing specially for the purpose of the motions, and, protesting against the jurisdiction of the court, moved to quash the service of the notice of the order above mentioned. These motions were based upon the grounds as therein stated, in the motion of Gould:

"First. That he is an inhabitant and a citizen of the state of New Jersey. Second. It appears upon the face of the bill of complaint that the relief sought is of such nature that he can not lawfully be called upon to defend against the same in this district. Third. This court is without jurisdiction to proceed against him."

And in the motion of the others:

"First. That said Joseph Ramsey, Jr., and W. E. Guy, and each of them, are inhabitants and citizens of the state of Missouri, and that E. D. Fultin and J. T. Blair, and each of them, are citizens and inhabitants of the state of Pennsylvania."

The second and third grounds were, in substance, the same as the second and third of Gould's. On the day appointed for hearing, the court Richards, Circuit Judge, presiding, granted the motions to quash the service of notice and ordered as follows:

"And the court being of the opinion that it is without jurisdiction of the said suit, and of its own motion, hereby orders, adjudges and decrees that the bill of complaint herein be and the same is hereby dismissed for want of jurisdiction, and the restraining order heretofore granted is hereby dissolved."

Judge Richards' opinion is reported in 141 Fed. 698. On this appeal the complainant assigns error as follows:

"First. The court erred in granting the motion in this case made by Joseph Ramsey, Jr., William E. Guy, E. D. Fulton, and James T. Blair, defendants above named, to quash the service of an order of this court entered herein on September 26, 1905.

"Second. The court erred in granting a motion, filed on the ———— day of October, 1905, by George J. Gould, one of the defendants above named, to quash the service of an order on said defendant made by this court herein on the 26th day of September, 1905.

"Third. The court erred in holding that this suit was not a suit in which service upon nonresident defendants could be made by publication or otherwise, in accordance with the orders of the court in that behalf, under section 738 of the Revised Statutes of the United States.

"Fourth. The court erred in holding that this suit was one over which the said Circuit Court of the United States had no jurisdiction, and dismissing the complainant's bill and amendment to the bill on its own motion, and dissolving the injunction.

"Fifth. This court erred in not retaining jurisdiction of said cause, and directing service by publication on the nonresident defendants, under section 738 of the Revised Statutes of the United States.

"Sixth. This court erred in not holding that the parties making the several motions specified in the first and second assignments of error, had entered their appearance in this cause, and submitted themselves to the jurisdiction of this court."

The principal questions which we are asked to review are:

(1) Did the defendants in stating the second ground of their motion submit as respects their persons, to the jurisdiction of the court?

(2) Was the nature of the case such that the court could obtain jurisdiction of the defendants by publication of notice, or service outside of the territory of its jurisdiction?

(3) Did the court err in dismissing the cause for lack of jurisdiction over persons whose presence was necessary to the prosecution of the suit?

In respect to the first of these questions, it is urged by counsel for the appellant that the defendants invoked the exercise of the jurisdiction upon the merits, by requiring the court to pass upon the facts of the case in order to determine the nature of the relief demanded against each of the defendants. But we think this is a forced construction of the language employed. It was indeed necessary for the court to look into the bill and ascertain from its allegations and the prayer for relief whether the nature of the case was such as to authorize it under the provisions of section 738, Rev. St., and of section 8, Act March 3, 1875, c. 137, 18 Stat. 472 [U. S. Comp. St. 1901, p. 513], to obtain jurisdiction of the defendants by publication of notice or service of process outside of its territory, for service could not be had within it. Without such examination and consideration of the nature of the relief sought, the court could not know whether it was an "action to enforce any legal or equitable lien upon, or claim to, or to remove any incumbrance of lien, or cloud, upon the title to real or personal property within the district where such suit is brought," to use the language of the statute, authorizing substituted service. The defendants, therefore, properly referred to the nature of the relief sought by the bill as a reason for denying the jurisdiction of the court over

their persons, for as they were neither citizens of the state nor residents therein, personal service could not be had, and the question for the court would then be whether the nature of the case was such that the substituted service authorized by the statute could be resorted to.

The second question is whether the case made by the bill and the nature of the relief asked would authorize the substituted service permitted by the statute. The provision is one similar to those in many of the states, perhaps all, enacted upon a sense of that public policy which requires that the status of its inhabitants and their rights of property localized in its dominion should be settled by its own tribunals, and that they should not be driven to foreign states to litigate such questions there with persons out of the state's jurisdiction. The territorial limitations of the power of the federal courts has respect to this policy, and aims as far as may be, consistently with the system of the Constitution and laws of the Union, to uphold it. This statute was enacted in that spirit. It did not intend to dispense with the time-honored requirement that personal service of process should be made within the jurisdiction in order to bring the party pursued under the authority of the court, further than is necessary to give the local court the power of decision concerning subjects fixed in its territory. The statute contemplates that the action in which substituted service of process may be made must be one which relates to "the title to. real or personal property within the district," language which imports a localized subject. Further, the action must be one to enforce some right in it, or to remove some obstruction to the enjoyment of it. It does not concern the rights to property which is intangible and transitory, choses in action and the like, adhering to the person of the owner, who may be here to-day and abroad to-morrow. Such subjects are not localized, and have never been within the scope of that solicitude which the policy of the state exerts for its inhabitants and over the fixed and tangible objects of ownership within its dominion.

Again, what is the legitimate subject of the kind of action to which the statute has reference? Evidently it must be the title to some property. In strictness, the word "title" is applicable only to real estate. But it is also sometimes used to denote a similar attribute of personal property. When so used, it has a kindred meaning, and contemplates some specific tangible thing, having some resemblance to real property in its characterictics which justifies the borrowing of the term. It is rarely, if ever, used to denote the ownership of transitory and intangible objects. It is singular that, although this statute has been in force for more than 30 years, there should be such a dearth of authority upon the matter of its construction. The validity of state legislation of this kind, so far as it affects titles to real estate, has been repeatedly affirmed; and no doubt is now entertained upon that subject. Arndt v. Griggs, 134 U. S. 316, 10 Sup. Ct. 557, 33 L. Ed. 918, and cases which have followed it. And it may be assumed that similar legislation for the judicial control of localized personal property would also be sustained. But that is the extent, so far as we know, to which such legislation has been attempted. The only case where the question with which we are now concerned was directly involved to

which we are referred, or have found, is that of Shainwald v. Lewis (D. C.) 5 Fed. 510, where Judge Hillyer, of the District Court of Nevada held that this section was only intended to reach those suits in equity in which it was sought to enforce some pre-existing lien or claim, legal or equitable upon or to some specific property, real or personal, within the district. Of course he was referring to that language of the act which relates to actions for the enforcement of a claim, and not to that relating to the removal of obstructions. The subject was discussed by Mr. Justice Brown in Greeley v. Lowe, 155 U. S. 58, 15 Sup. Ct. 24, 39 L. Ed. 69, and, although nothing particularly relevant here was actually decided, the language of the learned justice seems to assume that the subject of controversy in order to justify obtaining jurisdiction by substituted service must be a res localized within the district.

Now, the object sought by the bill in the present case was the arrest of the business and the winding up of the affairs of the partnership (for such it appears to have been) called the syndicate, on account of the misfeasances and negligences of the managers, Gould, Ramsey, and Guy. These charges were the gravamen of the complaint. Those persons were indispensable parties to the suit. No relief was sought against the two Ohio corporations, and the propriety of making them parties is not apparent. The assets of the syndicate, which it is alleged it had in Ohio, consisted of the stock of the two Ohio railroad companies above mentioned; and it is upon the theory that this stock had a situs in that state which localized it there, and gave ground for a suit in the courts exercising jurisdiction in the state against those railroad companies, and the bringing in of the managers of the syndicate by the substituted service of process provided by the statute above mentioned. And the case of Jellenik v. Huron Copper Mining Company, 177 U. S. 1; 20 Sup. Ct. 559, 44 L. Ed. 647, is cited as authority for the proposition that the situs of these stocks was in Ohio and that therefore the court sitting in a district of the state would have jurisdiction of a suit in which the stock is involved in the controversy. But the question there decided is not involved. For here there was no controversy about the ownership of the stock, as in that case, or about any lien or claim to it, or about any cloud or incumbrance upon it. The controversy raised by the bill is over the management of the business and affairs of the railroad companies by the managers, such as their expenditure of large sums of money in grading parts of the road, and not completing them "whereby the grading is going to ruin," the failure to effect proper and advantageous connection with other railroads, and the like. Upon allegations of such mismanagement it is charged that there is such a breach of the syndicate agreement and of the duties of the managers as justifies the dissolution of the compact and a closing up of the enterprises which the subscribers undertook. We are therefore of opinion that the case was not one in which the court could acquire jurisdiction of the defendants by the extraordinary service of process prescribed by the statute referred to.

The third question is whether the court erred in dismissing the bill.

If, as we have held, the case was not one in which the court could obtain jurisdiction by service of process in another state or by publication of notice, it had no power to proceed.  The defendants, who were indispensable parties were citizens and residents of other states as the bill stated; and a suit could not be brought against them by a citizen of Illinois in the Southern District of Ohio without their consent.  Section 1 Act March 3, 1887, c. 373, 24 Stat. 552 [U. S. Comp. St. 1901, p. 508]; St. Louis & San Francisco Ry. Co. v. McBride, 141 U. S. 127, 11 Sup. Ct. 982, 35 L. Ed. 659.  They did not waive their privilege, which is enough to say; but they expressly dissented.

The order and decree dismissing the bill for want of jurisdiction should be affirmed, with costs.