**PORTER et al. v. COOKE et al.**

**No. 443.**

District Court, W. D. Louisiana, Shreveport Division.

Aug. 21, 1931.

Wilkinson, Lewis, Wilkinson & Burford, of Shreveport, La., Barker & Drury, of St. Louis, Mo., and John T. Guyton, of Shreveport, La., for complainants.

Elmo P. Lee and Wise, Randolph, Randall & Freyer, all of Shreveport, La., Fraser & Carroll, of Many, La., and T. M. Milling and F. L. Hargrove, both of New Orleans, La., for respondents.

DAWKINS, District Judge.

Complainants, some sixteen in number, claiming to be citizens of Ohio, Pennsylvania, and Illinois, allege that they "own an interest in the property hereinafter described and located in the state of Louisiana, and within the Shreveport Division of the Western District of Louisiana, and now in the possession and under the control of the respondents, Walter E. Cooke, R. L. Gay and L. M. Emlet"; that Cooke is a resident of the city of Paterson, N. J., Gay of Zwolle, Sabine parish, La., Emlet of the city of St. Louis, Mo., and that respondent Emlet & Co., Inc., "was incorporated under the laws of the state of Delaware, on or about the 10th day of January, 1924, and thereafter failed to function as a corporation or comply with the laws of the state of Delaware relative to and covering corporations, or to comply with the laws of Louisiana, or any other state," whose charter had "lapsed and been revoked"; that respondent the Zwolle Oil & Gas Company is a corporation under the laws of Louisiana, and a resident of said state; that respondent Loring Oil Company is also a corporation under the laws of Delaware, whose agent in this state for the service of process is R. A. Fraser of Many, La.; that respondent the Standard Oil Company of Louisiana is a corporation under the laws of Louisiana, and "a resident of said state."

The petition further alleges as follows:

"3. That respondents Walter E. Cooke, R. L. Gay and L. M. Emlet since the year 1924 have been, and now are, co-partners, and co-partners with claimants and others with the same rights and in the same class as claimants, as hereinafter set out and alleged; that the legal status of said partnership is such as is known and designated in law as a 'mining partnership' and sometimes as an 'ordinary partnership.'"

**1034**

"4. This is a suit of a civil nature and in equity and between citizens of different states of the United States of America with a diversity of citizenship, and brought for the purpose of conserving the assets of the claimants and others having a like interest with claimants hereinafter referred to and described and distributing said assets among those entitled thereto or having claims therein or thereon. That the partnership and community property hereinafter described is located within the Shreveport Division of the Western District of Louisiana."

The petition then sets forth in detail various sums of money advanced to the enterprise by petitioners and for which they claim an interest in the alleged partnership; that there are approximately seven hundred other investors who with complainants and respondents "own an undivided interest in the joint and community property and partnership business hereinafter described"; that the said seven hundred individuals are "in the same class and have the same rights" proportionately, and this suit is brought on behalf of all who may wish to join herein.

Further, that prior to July, 1924, petitioners, the said seven hundred other persons, and respondents, were stockholders in the Keystone-Ranger Development Company and the Consolidated Texas Production Company, both of which were "oil promotion companies, and which failed with a total loss to the investors therein"; that at about that time, "in an attempt to save or recover their previous investment," all of said parties undertook to drill for oil and gas in Sabine parish, "and entered into and continued thereunder and are continuing to operate under a mining or ordinary partnership agreement for the operation and development thereof"; that for said purpose the name of "Emlet & Company, Inc.," was used "by said partnership from time to time in connection with other names hereinafter mentioned," including that of "L. Emlet"; that under an agreement between respondents, Walter E. Cooke, R. L. Gay, and L. M. Emlet, together with these claimants and others' in the same class, oil and gas leases were from time to time acquired in Sabine parish, La., and the parties engaged in exploring for oil and gas "during all of the times hereinafter mentioned and they are now so engaged"; that the said Emlet & Gay, for the account of all concerned, drilled a large number of test wells upon the leases later described, which for various reasons were not successful; that, after the completion of each unsuccessful well, the complainants and others

were solicited by the said respondents, until "about $150,000 in cash had been contributed"; that during the same time Walter E. Cooke, so complainants are informed and believe, contributed about $300,000; Emlet also claims to have contributed large sums thereto, but, according to information and belief, Gay contributed nothing; that the said respondents, in soliciting the funds from complainants and others, represented to and agreed with them that, upon the discovery of oil or gas in paying quantities, the latter should first have returned to them their investment with 100 per cent. profit, and that thereafter one half of the profits would be divided pro rata among all of said investors, including Gay and Emlet, and the remaining half of the profits would go to respondent Walter E. Cooke, "which contract and agreement said respondents have violated and entirely ignored"; that, in order to raise funds and to induce complainants and others to contribute thereto, "and in furtherance of the conspiracy hereinafter alleged, said respondents used many fraudulent devices and employed divers and sundry fictitious artifices, including names and phrases, indicating companies and corporations of financial importance, strength and prominence, were operating the properties herein described," including some seven specific names in addition to that of Zwolle Oil & Gas Company, which is a legal corporation; that at times leases covering small tracts were offered as a bonus or special inducement to furnish more money to the common fund, but none of said leases were executed or delivered to claimants, or even recorded, and such offers were fraudulently made for the purpose of inducing claimants to increase their respective investments, and said leases are now held by the individual respondents; and that all of the money "so raised was used and disbursed by said individual respondents in developing and exploring for oil and gas on said partnership oil leases hereinafter referred to and specifically described, etc." Articles 11 and 12 of the petition are as follows:

"11. Claimants, for themselves and for the other said investors of the same class who may join herein, allege that said partnership property herein referred to and described is the joint and common property of all of said investors and that each of the claimants and each of said other investors is entitled to share therein in an amount from the entire property equal to the percentage that his investment bears to the total investment in said property and enterprise."

"12. That from the sums so contributed

by said investors, including the individual respondents, oil and gas leases and other property were acquired by said partnership and schedules describing said properties, as far as known by claimants, are attached hereto and hereinafter, by appropriate marks, identified. That through the expenditure of money furnished by these claimants and the others of the same class said leases became of great value and are now worth approximately $4,500,000.00."

Further, that during the year 1925, and thereafter, the respondents Cooke, Gay, and Emlet, when the discovery of oil seemed assured, "conspired and are continuing to conspire" for the purpose of cheating and defrauding complainants, as well as others in the same class "out of their interest in and to the properties that were acquired and are now held and controlled by them in said Parish." Further, that on or about November 28, 1928, "respondents, through their operations as aforesaid, discovered oil in paying quantities," which greatly enhanced the value of the leases so acquired; that during said year of 1928 the said conspirators "illegally divided among themselves and with parties other than respondents, certain of the assets of the partnership, in an attempt to defraud these claimants and those in the same class out of their interest in said partnership property" and pretended that "L. M. Emlet was to and should take care of claimants and of said other parties in the same class; they well knowing said L. M. Emlet was insolvent; * * *" that the said L. M. Emlet did not have authority to represent the complainants and said other parties, and that the said Emlet, Cooke, and Gay did not intend to settle with and account to said claimants "and made no effort to do so"; that, as a part of said conspiracy and to place said partnership assets beyond the reach of complainants, they allowed a number of said leases to lapse "in order that new ones to the same property might be obtained by them," and thereupon immediately entered into new leases, which they apportioned among themselves, all in pursuance of said scheme to defraud complainants, and all other persons in the same class, which procedure is known in the oil industry as "topping."

The petition then states that certain pretended controversies were provoked between Emlet on the one part and Gay and Cooke on the other, in which Emlet was threatened with criminal prosecution, and for the purpose of getting some of the property into the hands of Cooke and Gay; that finally Emlet filed a suit in this court, being No. 373, in equity, which was later dismissed as to Cooke but is still pending against Gay, which said suit complainants allege should be dismissed or combined with this proceeding; that on January 29, 1930, Cooke, Gay, and Emlet sold "some of said oil properties to Benedum & Trees Oil Company for a cash consideration of $1,000,000.00 and $2,000,000.00 to be paid out of oil," with an overriding royalty of one twenty-fourth, which said company transferred said properties to the Loring Oil Company.

Complainants further allege that they and all other persons in the same class are "entitled to be reimbursed for the amount of their respective investments," and also sums equal to the percentage which their investments bear to the whole investment in said properties. It is further alleged as follows:

"18. That some of the funds, properties, rights and credits in which claimants' interest is herein sought to be recognized and enforced are held for the account of the individual respondents by said Loring Oil Company and said Standard Oil Company of Louisiana, and they are, therefore, made parties respondent hereto."

Further, that the Zwolle Oil & Gas Company, Inc., was organized by Gay and Emlet about December, 1926, and "said respondents transferred to said corporation a one-half interest in and to oil and gas leases belonging to said partnership," a description of which is set forth; that said leases were and are of great value and said transfer was "without adequate consideration, and that stock in said corporation and at least half of it, is in the name and possession of said individual respondents, or one or more of them, for their benefit," who are holding the same and enjoying the income therefrom, notwithstanding said stock is partnership property, and "in equity now held in trust for the use and benefit of all of said parties interested therein as herein alleged"; that the other oil and gas leases are in the name of Cooke, Gay, Emlet, and Zwolle Oil Company, which are properties "belonging to said claimants and on information and belief petitioners allege that still other properties are held in the names of persons unknown to claimants, which likewise belong to said enterprise," a list of the properties so held being attached to the petition and marked "Exhibit B," "and in equity said property is held by said wrongful holders in trust for the benefit of said partnership estate." It is further alleged in articles 21 and 22, as follows:

"21. Claimants state that the oil being re-

covered and taken from the properties described in Exhibit 'A' has been and is being sold by the respondent Loring Oil Company to respondent Standard Oil Company of Louisiana, and that from said oil runs said Standard Oil Company of Louisiana has paid and is paying to the respondents Walter E. Cooke and R. L. Gay large sums of money; that the taking of such money by said respondents operates as a fraud against claimants and others of said class and said money constitutes trust funds for the benefit of said partnership estate."

"22. Claimants state that they and the other investors in the same class herein mentioned have never received any payment from the proceeds of the sale of said property by said individual respondents, or from any other source, and that no consideration of value has ever passed to them, or any of them, for or representing their interest in said partnership property. That claimants have demanded of the respondents Walter E. Cooke, R. L. Gay and L. M. Emlet, an accounting and payment of the amounts found to be due them, but said respondents have refused and failed to make an accounting, or to pay them, or any of them, any amount whatsoever."

Further, that complainants' interest in said enterprise is being "rapidly dissipated and appropriated to the personal use of said individual respondents," and will continue; that certain of the properties have been heretofore sold, others are in danger of being sold and similarly applied to the use and benefit of said respondents; that the oil wells are constantly being depleted; that the properties are being transferred to parties unknown to claimants and will be entirely lost to them, all of which is causing and will cause complainants irreparable injury; that, to enforce their rights individually, complainants and other persons in the same class would be compelled to file approximately seven hundred suits, and, for this and many other reasons, there is no adequate remedy at law; that claimants desire a dissolution and liquidation of the said partnership, which can only be done through a receiver, and that this suit is not a collusive one to confer jurisdiction on this court.

The prayer is for the appointment of a receiver for all of said properties, including any moneys payable to any of the said respondents growing out of said enterprise, of real and personal property, leases, books, papers, etc., and that the receiver be authorized to carry on the business until it can be liquidated; that an accounting be had between claimants and the individual respond-

ents, but that the receiver be directed to institute suit against said respondents for the return of the stock of the respondent Zwolle Oil & Gas Company; that he be made a party to the suit of Emlet v. Gay et al., and that Emlet be enjoined from exercising any control thereover; that a master be appointed to hear the evidence; that the interests of the parties be determined and judgment rendered accordingly, and that "if there is not sufficient property in said partnership to satisfy the rights of the claimants and others in the same class, that the receiver be instructed to institute suit against the said individual respondents"; that the individual respondents be enjoined from exercising any rights or control over any of the partnership property; that the partnership property and leases described in Exhibit B be "declared, adjudged and decreed as and to be the property of said partnership"; and that the receiver be instructed to institute such other suits as may be necessary, and for such further equitable relief as may seem meet and proper. Attached to the petition are Exhibits A and B, consisting of lists of lands, leases, etc., alleged to be affected by its allegations.

Two amendments were filed on February 18th and March 9th, respectively. In the first it was set forth that Cooke is a resident of the city of Paterson, state of New Jersey, Gay of Swolle, Sabine parish, La., and Emlet of St. Louis, Mo.; that Zwolle Oil & Gas Company is a corporation under the laws of Louisiana; that respondent Loring Oil Company is a corporation under the laws of Delaware, but has appointed R. A. Fraser, of Many, La., as its agent for the service of process; and that respondent Standard Oil Company of Louisiana is a resident of the state of Louisiana. Petitioners therefore pray for service according to law, and that "an order be issued by this court, directed to the respondent Walter E. Cooke, ordering him to appear in this suit and plead, answer, or demur, in the time fixed by the court and a copy of said order be served upon said Walter E. Cooke, wherever found."

The amendment of March 9th was of similar import. Both prayers are for judgment as in the original bill.

On April 25th a further order was obtained for service upon Cooke under section 57 of the Judicial Code.

The matter has been submitted upon the following exceptions: (1) A motion by Walter E. Cooke to quash the order to appear and service of the original and amended bills; (2) a motion to dismiss by the same respond-

ent; (3) a motion to dismiss by the Zwolle Oil & Gas Company; (4) a motion by Cooke to quash the service under the order of April 25th; and (5) a motion by Gay to dismiss.

There are really only three questions raised by the exceptions, to wit: (1) Whether, under the allegations of the bill, the respondent Cooke can be made to appear in compliance with the provisions of section 57 of the Judicial Code (28 USCA § 118); (2) Does the petition allege facts to show the existence of an ordinary partnership for the purposes claimed under the Louisiana law? and (3) Can the action otherwise be maintained against the remaining defendants?

It will be seen from the above-extended recital of the allegations of the bill that, in substance, the complainants say that they furnished money to the respondents Gay, Emlet, and Cooke for the purpose of acquiring leases and exploring for oil and gas over a period of years, in which the first ventures proved unsuccessful, and that subsequently more money was furnished and oil discovered in what is known as the Zwolle Field of Sabine parish, in this state; that the terms and conditions upon which their money was advanced were that, when oil or gas was found in paying quantities, they were to be repaid the amounts advanced by each, plus 100 per cent. profit, and, in addition, were to share in one-half of the remaining profits of the common enterprise, in the proportion which their advances bore to the whole sum invested by all concerned. This they denominate a "mining" or ordinary partnership under the law of Louisiana. They allege that, by divers methods and acting in concert or conspiracy, after having discovered oil, the defendants have fraudulently converted the assets so acquired to their own use and benefit, thereby depriving complainants and the other persons in the same class of their just rights in said properties, profits, funds, etc., arising from the common undertaking. A receiver is asked to take charge of the property of the alleged partnership; petitioners pray for an accounting and distribution of all property and funds which it is alleged, in equity and good conscience, belong to them and their associates, and for other appropriate relief to subject any and all of it which may have been concealed or otherwise disposed of to that same purpose. The Standard Oil Company of Louisiana is made a party defendant merely for the purpose of impounding in its hands any money which may be due for oil, etc.

Do these alleged facts disclose a cause of action such as to bring the absent defendants into court under the provisions of section 57 of the Judicial Code? It is, of course, the contention of the complainants that the present suit is one of a local nature, falling under the provisions of that section, which is as follows:

"When in any suit commenced in any district court of the United States to enforce any legal or equitable lien upon or claim to, or to remove any incumbrance or lien or cloud upon the title to real or personal property within the district where such suit is brought, one or more of the defendants therein shall not be an inhabitant of or found within the said district, or shall not voluntarily appear thereto, it shall be lawful for the court to make an order directing such absent defendant or defendants to appear, plead, answer, or demur by a day certain to be designated, which order shall be served on such absent defendant or defendants, if practicable, wherever found, and also upon the person or persons in possession or charge of said property, if any there be; or where such personal service upon such absent defendant or defendants is not practicable, such order shall be published in such manner as the court may direct, not less than once a week for six consecutive weeks. In case such absent defendant shall not appear, plead, answer, or demur within the time so limited, or within some further time, to be allowed by the court, in its discretion, and upon proof of the service or publication of said order and of the performance of the directions contained in the same, it shall be lawful for the court to entertain jurisdiction, and proceed to the hearing and adjudication of such suit in the same manner as if such absent defendant had been served with process within the said district; but said adjudication shall, as regards said absent defendant or defendants without appearance, affect only the property which shall have been the subject of the suit and under the jurisdiction of the court therein, within such district; and when a part of the said real or personal property against which such proceedings shall be taken shall be within another district, but within the same State, such suit may be brought in either district in said State. Any defendant or defendants not actually personally notified as above provided may, at any time within one year after final judgment in any suit mentioned in this section, enter his appearance in said suit in said district court, and thereupon the said court shall make an order setting aside the judgment therein and permitting said defendant or defendants to plead therein on payment by him or them of such costs as the court shall

deem just; and thereupon said suit shall be proceeded with to final judgment according to law."

Plaintiffs do not allege that they either own an interest in any of the property individually or have a lien upon it, but merely that the several leases and other property taken in the names of respondents and other persons, including the stock of the Zwolle Oil & Gas Company, held in the name of respondents, belong to the alleged partnership, of which they are members. In the first place, it is extremely doubtful as to whether the allegations disclose an ordinary partnership, and clearly, in so far as the mineral leases, or any other real property, are concerned, title thereto, under the laws of this state, could only be established by written evidence. Article 2836 of the Revised Civil Code of Louisiana, declares:

"If any part of the stock of this partnership [an ordinary or particular partnership] consists of real estate, it [the contract of partnership] must be in writing, and made according to the rules prescribed for the conveyance of real estate, and recorded as is hereafter prescribed with respect to partnership in commendam."

Even if the title to such property could be established in the alleged partnership (which, according to the petition, stands in the names of individual respondents, the Zwolle Oil & Gas Company, a corporation, and others), it would still belong to an entity distinct from the individuals who compose it. Levet v. Lapeyrollerie, 39 La. Ann. 213, 1 So. 672; Townsend v. Payne & Co., 42 La. Ann. 913, 8 So. 626: The interest of the partners is residuary, or what remains after liquidation of its debts. Toelke v. Toelke, 153 La. 697, 96 So. 536. The demand is not one to have the present title declared to be in plaintiffs, but in the alleged partnership, for the purpose of liquidation and division of its proceeds after sale and ascertainment of their respective interests in the residue. And certainly, in so far as the plaintiffs seek a personal judgment against Cooke and Emlet for money and property converted to their own use, or for an accounting for that had and received, I am of the opinion that this court is without jurisdiction, since both the plaintiffs and these defendants are citizens of states other than Louisiana. Jones v. Gould et al. (C. C. A.) 149 F. 153.

The petition, by inference only, tends to establish that the alleged partnership was entered into or has its domicile in this district; it is not alleged in so many words.

Neither does it state facts to show that complainants and respondents agreed to be responsible for the debts of the alleged firm in accordance with the law of this state, by which an ordinary partner is made liable for his verile share of all indebtedness so incurred. Plaintiffs merely say that they furnished so much money to be invested by the respondents, or some of them, and for which they were to receive, if the enterprise proved successful, first the return of their advances with 100 per cent. profit, and a proportionate share out of the remainder of the profits. Under this showing, that is, the principal property or assets of the alleged firm in this state being real property, i. e., mineral leases, as to which the articles of partnership must have been reduced to writing, and recorded in the manner as governs the conveyance of real estate or the creation of a partner in commendam, the plaintiffs not alleging liability for, and no facts being stated which, under the state law, in my opinion, render them liable for debts created by the undertaking, I am constrained to hold, notwithstanding the legal conclusion of the pleader to the contrary, that, as between the parties, it was not a partnership, but an agreement wherein an equitable trust was established which authorized the respondents, or some of them, to invest plaintiffs' money and to account therefor in the manner set forth in the bill. In so far as any money, stocks, or other personal property present within the district in kind, or in the form of choses in action due by third persons, are concerned, the petitioners, notwithstanding their foreign citizenship and that of defendants, might maintain such an action if a specific title thereto or a lien thereon in themselves were claimed. However, this proceeding does not seek the establishment of an immediate title to or lien in favor of the complainants upon property within this district, but that the entity denominated a partnership first be declared to be the owner, that it be liquidated, and the residue divided between the petitioners and others, as their interests may appear.

The legal effect, as I see it, is no different to what it would be if creditors without a lien upon specific property or stockholders, citizens of one state, were seeking the appointment of a receiver and liquidation of a corporation domiciled in another, in a third state, because of the presence in the latter of property and a place of business. In both instances, the rights of the claimants (partners and stockholders or creditors without a specific lien) are eventual. They do not rest upon a title or lien upon any particular prop-

erty existing at the filing of the suit, but upon results which flow from the courts having first exercised jurisdiction. See the elaborate opinion of Judge Sanford, afterwards a Justice of the Supreme Court, in the case of Western Union Telegraph Co. v. Louisville & N. R. Co. (D. C.) 201 F. 932, and numerous authorities therein cited, including Central Trust Co. v. McGeorge, 151 U. S. 129, 14 S. Ct. 286, 38 L. Ed. 98.

Even if facts were alleged to show a lawful partnership domiciled in this district, this suit is not one against it as such, but against some of the persons claimed to compose it, who are sought to be brought into court under the provisions of section 57 of the Judicial Code (28 USCA § 118). The jurisdiction given by that section cannot be invoked, as we have seen, except where the petitioner alleges facts, not merely legal conclusions, showing an interest in or lien upon specific property. It is therefore unnecessary to decide whether in a proper case creditors or partners might, with the requisite diversity of citizenship, maintain a suit for the appointment of a receiver and liquidation of a partnership domiciled here.

The Zwolle Oil & Gas Company, domiciled in this district, as I understand it, was made a party for the purpose of having the stock therein held by the other defendants, declared to belong to the alleged partnership; the Standard Oil Company, also a citizen of this state, is only an incidental party; while all the other defendants, except Gay, are citizens of other states, and cannot be brought in in the manner attempted. The petition otherwise does not state in any definite form its cause of action against Gay. It may be that by amendment or redrafting of the bill it could be made to show grounds for relief or recovery against him, in view of his residence in this district and personal service. As to all others, I think the bill should be dismissed. Proper decree should be presented.